Thank you, Your Honor. May it please the Court, Philip Smith on behalf of Petitioner Mr. Jorge Robleto-Pastora. Your Honor, I did want to try to reserve two minutes for rebuttal. I think we know the facts here, so I kind of wanted to jump in. There was a Fourth Circuit case that I located. It was McIntosh-Santa v. Michael MacCasey. Are you familiar with that? I am not, Your Honor. Well, that talked about that it's informative on our case in the sense that this is a refugee that became an LPR and then wanted to readjust his status similarly to Mr. Robleto-Pastora, and they said he couldn't do it. But if you're not familiar with it, it does seem to, it comes out contrary. Well, yours is an asylee and this is a refugee, but it would seem to me to make no sense that an asylee would be treated differently than a refugee. Well, it's certainly our position that that refugee statute is very different to the asylum statute, and even when it comes to readjusting status under the refugee adjustment provision, one requirement is that the refugee had not obtained lawful permanent residence status to be eligible to adjust, and there is not a similar requirement in the asylum adjustment status provision. And I don't know, actually, the 430 case may have come from, there was a board case which was a matter of SK that I don't think actually has been, is included in the briefing, and that did have a paragraph about this refugee readjustment, and it did say that a refugee could not readjust. But, again, and it was based on this provision in the refugee adjustment statute that says they shall not have already obtained lawful permanent residence status. So it's our position that it's very different from the asylum adjustment because it doesn't have that same prohibition. And just, I mean, to address the point of the removal order, it's our position that the removal order is unlawful, and it is unlawful because Mr. Robleto was granted asylum status, his asylum status has not been terminated, and the asylum statute expressly states the Attorney General shall not deport or remove an individual granted asylum status. And that, again, is very different from the refugee statute, which does not include that prohibition. And the asylum statute, which is very comprehensive and detailed, doesn't just stop there. It says the Attorney General shall not deport or remove an individual granted asylum. It then goes on to give certain conditions in which asylum status can be terminated, and it establishes a procedure for termination. It then has another section which says after asylum status has been terminated, the individual is subject to any applicable ground of deportability or inadmissibility. Well, I guess where in Section 209 or anywhere else in the Act does it say that readjustment of status to lawful permanent residence status provides exemption from removal? I mean, you seem to be pulling out, you know, I feel like you're pulling out places and not reading everything as a whole. Where does it, in, for a- Where does it say that a readjustment of status to a lawful permanent residence provides an exemption from removal? It does not, in the case law from the Board where it allows for readjustment for lawful permanent residence status, it doesn't say it provides an exemption, but first the asylum status has to be terminated. And if, in fact, under the 209 they're able to adjust, then there is a waiver provision to be granted the adjustment. Well, I guess you cite 8 CFR sections 1208.24 and 1208.22. Yes. Well, if you go on in that 1208.24, there is a provision which states that asylum status can be terminated in conjunction with a removal proceeding. So, in fact, it can be. But there has to be notice provided, and then the immigration judge actually has to terminate asylum status. And that is the process. In fact, they use, that's how they terminate asylum status. But in addressing your question then on the adjustment, the readjustment, it allows the person to do, for the waiver in 209C, there is a waiver of inadmissibility for the, for in this case, a criminal conviction. So that it's available to allow the person to continue with their permanent residence status. Well, I understand that nothing in immigration law really makes sense. So taking the common sense approach never really works here. But, you know, obviously when your client was an asylee, he had a certain status. And he obviously saw fit to be, but an asylee can still be removed if conditions improve in their country, right? If their status is terminated. It can be terminated because of that, and then they can be removed. That's right. And so becoming an LPR puts them on a track to becoming a citizen, which being an asylee doesn't necessarily do that. And he made that decision. But then, unfortunately, after that, he committed some crimes. So now he wants to go back to be an asylee, get that terminated, and then try to apply for a waiver to become an LPR again, right? Well, I mean, that seems to be the impression. But, actually, the asylum status and the lawful permanent residence status continue. They both can be held simultaneously. And, in fact, that's the agency's interpretation of the statute. I mean, they're not suggesting it in this case. But there is we have submitted the notice where they give that asylee who becomes a permanent resident, if they return to their home country, they are subject to having that underlying asylum status terminated. So you're saying he's an asylee and an LPR at the same time? That's correct. He maintains both asylum status and lawful permanent residence status. And that is how the immigration agency interprets that statute. He commits a crime for which an LPR can be removed. You're saying that he can't just be removed based on a due process hearing on that, that they have to have a separate proceeding at the same time to remove his asylum status, right? Well, it's not a separate proceeding, but the regulation requires, as part of the removal process, that notice of intent to terminate asylum status be given. And then the immigration judge can't do it at the same hearing. And they do do that at the same hearing. And I would just point to that. So what's bothering me in a way with this argument is, you know, if they're saying they want to remove him, isn't that implicitly saying they're disagreeing that he can stay as an asylee? You know, why do they have to use those words if they're saying you did a crime for which you're removable? One is to give the person notice. And there is the regulation that states that's the way to do it. The second, though, is the board has and they have precedent, matter of K.A., in which they state that asylum, that termination of asylum status is not automatic and is not mandatory. The statute says that the attorney general may terminate asylum status. And that comes into play in this case, as it did in that board decision, that the immigrant ---- stay here as an asylee if he, let's say, let me say hypothetically, assume he had an even stronger case for asylum. In this case, it's somewhat, you know, based on his proximity to relatives. But assume that he was beaten and tortured and all kinds of things directly, and he got asylum. Then he commits a crime. Say he then commits another crime. Does the ---- can the immigration service leave him here and not remove him? Can they leave him as an asylee while he continues to commit crimes for which he's removable? Is that within their discretion? Well, I think it would be highly unlikely that an immigration judge would exercise discretion and not terminate a person's asylum status depending on what type of crime they committed. Certainly, the agent ---- if the immigration judge were to do that, the agency would appeal that decision to the Board of Immigration Appeals. And they stated that they are highly unlikely to exercise discretion to not terminate a person's asylum status depending on the type of conviction. Okay, well, your time is ---- you're over your time. But we'll add a minute or two for you to do a rebuttal argument. Thank you. Members of the Court, good morning. I'm Paul Fioriano for the Respondent. Petitioner's entire argument is premised on a notion, an incorrect notion, that a person granted asylum who subsequently adjusts their status to lawful permanent resident retains asylee status. Well, let me ask you this. He's arguing since we've just jumped right to it since we don't have a lot of time. If termination of asylee status is not required prior to removal, what's the purpose of the language in Sections 1208.24 and 1208.22 which seem to require it? Those are for individuals who have been granted asylum who retain the status as an asylee but have not become lawful permanent residents. Once you're ---- if you're granted asylum, you are an asylee. You retain that status for up to a year. Once you become a lawful permanent resident, you are no longer an asylee. Where does the statute say it's barred after a year? The statute doesn't ---- well, adjustment of status, I believe, is ---- doesn't say that it expires. It permits you to adjust your status. Where is it in the statute? I believe it's in 209A, I believe. But the statute only makes sense reading it that way. You and Mr. Smith are a bit like ships passing in the night on this one issue. Yes. At least, do we have any authority from the Supreme Court or our circuit just on the general idea that if someone is granted ---- if someone who gets asylum is granted a lawful permanent resident status, that their asylee status is thereby terminated? I have not been able to find any specific reference statutorily or in any court case that says that specifically. But it's the only way that the statute makes sense is to read it that way. We believe that the ---- There are two separate and distinct statuses, if you will. And if you can be expelled from the country on the basis of one, why is that insufficient? Period. I'm not sure I follow. It says if you commit a crime, you're going to lose your status here. Correct. You're going to be exported. Correct. Go back to your country of origin, whoever will take you. Right? Right. After you serve your prison term, probably. What's wrong with that? I mean, if that happens, why doesn't that trump the prior status? Well, we think that it does, because the removal statutes that address crimes, for example, refer to any alien. Any alien who commits an aggravated felony is subject to removal. There's no language in the statute that requires that asylees or refugees have their status terminated. Let me ask you this, though, here. Okay, in these facts, there are arguments made that he isn't going to be tortured if he goes back and that perhaps the record isn't as strong as it might be in some other cases. What if he adjusted to LPR, commits the crime, and does all of that, but to send him back to his country of origin, he clearly would have a stronger case than, say, here, that he had a stronger case for asylum and he has a stronger cat case and all of that. Would we send him back to that country? If he established that it was more likely than not that he would be tortured or persecuted, he would have a valid cat claim or withholding claim. And depending on the nature of his crimes, he certainly could be eligible for withholding of removal. But under that argument, you would still say he would have lost his asylum status, but he would be eligible for withholding of removal. Yes, if the facts permitted that. Now, did you find, did you see this Fourth Circuit case that I mentioned on McIntosh? No, Your Honor. It's Saintha v. McKasey, and it has to do with, it's regarding a refugee. It's saying that it's the same argument, but he was a refugee as opposed to an asylee, and they adopt your reasoning. Yes, the board initially adopted that reasoning in the Smricco case, and we think that the reasoning in Smricco is persuasive. On Petitioner's argument in this case, he's arguing that you can't remove me because I was granted asylum without terminating my asylum status, and there's only certain means of terminating asylum status. As we mentioned in our brief, there are grounds for removal that are not covered under the grounds for terminating asylum status, so it's potentially possible that, for example, a person convicted of a firearms conviction, if he had been granted asylum sometime in the past, you couldn't remove him because you couldn't use that basis to terminate his asylum, and we think that that makes no sense, and Congress couldn't possibly have intended that result. And that's why we say even though the statute doesn't specifically say that adjusting status terminates asylee status, that's the only way that it can be read to make any sense and to give meaning to congressional intent to remove aliens who commit crimes. Well, the immigration law doesn't make a lot of sense to me in a lot of ways, so that's why taking the common sense approach sometimes makes me think I might be wrong because a lot of the results just have no common sense. I am not disagreeing with you, Your Honor. That's why... So it doesn't really say it. It doesn't say in plain language anywhere in any of the statutory scheme that becoming an LPR terminates your previous status, that it subsumes it, right? Correct. So I can't get it from the plain language. Well, you have to... What we would ask the Court to do is give deference to what the Board decided in this case and in conjunction with the Smricco case. I think that the Board's decision in this case, though not a published decision, certainly is entitled to deference because the Board reasons, under the reasoning that it applied in Smricco, that when a person who is granted asylum or refugee status changes to LPR, their previous status is necessarily extinguished, and all the statutes that talk about revoking or terminating asylee status or refugee status apply only to those people who have not subsequently adjusted status to lawful permanent resident. That's the same thing with respect to the K.A. case. In K.A., the individual was an asylee that had not adjusted status to lawful permanent resident. And if you read what the Board decided in that case, it doesn't apply to the facts of this case. It's a different animal entirely. Does it make sense, as Appellant has argued, that refugees and asylees should be treated differently? If a refugee becomes an asylee, because in the Sampha case, the refugee became an LPR, then committed a crime, and reached the conclusion that you're asking this court to come to with an asylee. Is there any reason to treat asylees and refugees differently under the same facts? No, because the statutes which provide the grounds for removal refer to any alien and don't make any distinctions between refugees, asylees, or just aliens admitted as immigrants or under any other type of visa. We don't think there's any distinction there. Now, there's one issue that the petitioner brought up with regard to the memorandum that he attached to his brief and that's not part of the record. We don't think that that memorandum does not speak for the position of the agency on this issue. It certainly contradicts the logic of the board's decision in Smirko. It contradicts the logic of the board's decision in this case, and it also contradicts the logic of the courts of appeals that have adopted Smirko, including the Third Circuit and I believe the circuit as well. To the extent that the court would want to give that internal memorandum any weight, we would ask the court to remand the board to allow it to speak first on that issue. But we think that that's not necessary in this case, that the statutes make sense only with the implicit understanding that an asylee who adjusts status to lawful permanent residence. Okay. I want to ask you another question. Am I correct that if you commit certain crimes, you're not eligible for asylum? Correct. So are the crimes that he committed within the category on the basis of which, like a person who committed them could not gain asylum if they didn't have it before? They were just applying for it now. Well, he is convicted of an aggravated felony, and an aggravated felony conviction would preclude a grant of asylum. It wouldn't necessarily preclude a grant of withholding unless it was what they call a particularly serious crime, which is yet another distinction that is perhaps beyond the scope of his argument. But he could get withholding of removal if he could. What I'm wondering is if the conviction would bar gaining asylum if that would terminate an asylee's status, apart from whatever right he'd have to apply for withholding. In other words, based on his past conviction, could he get asylum in the future? I don't think that he could based on that. If that's true, does that mean that a status as an asylee would terminate? No. Because our position is that his asylee status is gone once he became a lawful member. Right. But assuming we didn't agree with that, I'm just wondering how this fits together. It's sort of strange, and we'll let your opponent address this, but I'm having trouble seeing how you can retain an asylee's status when you're no longer eligible for asylum. Well, we would agree that if the Court doesn't agree with our position about the extinguishment, that it would be difficult. But I don't know about the Court. Well, are there other cases where I got from the impression from what Appellant said, that it's clearly established that you can maintain both asylum and LPR status. Is that clearly established? No. We don't believe it is. Notwithstanding that memorandum, which seems to suggest that, which, as we said, doesn't speak clearly with respect to the agency's position. Very interesting. Okay, Mr. Fiorina, we appreciate your argument. Thank you. I think our time has concluded. Mr. Smith, I said we'd give you a minute. It's so complicated, I'll give you two minutes extra. Thank you. I mean, I understand there are a lot of points there. Addressing your question, Judge Gould, the Board, in its precedent decision, matter of K.A., stated that conviction for an aggravated felony, which would render someone ineligible for asylum status if they were applying anew, it does not automatically terminate asylum status. And in that case, the individual had been convicted of an aggravated felony, and they sought to apply for adjustment of status along with this with a waiver. And the Board, the judge granted the application, and the Board held that that was correct, that termination was not automatic. The difference between that case and this case is Mr. Robleto has already acquired the lawful permanent residence status. Well, you want to retain your asylee status so that then he can reapply to become an LPR and get a waiver. Absolutely. Because if he had never become an LPR and he were an asylee, the aggravated felony, he could apply for a waiver. That doesn't mean he would get it, but he could apply for a waiver. That's correct. And possibly. But the question is, if he's already an LPR, can he, but you need to retain. For him to prevail, he has to retain his asylee status. That's correct. And reapply to be an LPR. Forget the other LPR. Well, that's correct, assuming they go through the proper termination process. And they can. I mean, they certainly are able to do that. If we granted the petition, wouldn't your argument be requiring us to remand it so that the board could follow the regulation and decide if they want to knock out the asylee status? Well, I think you could certainly grant it because they haven't followed the statute and the regulations to terminate the asylum status. If it was granted, then we would say that that would vacate the removal order. It would not preclude the agency from initiating a new process, doing the termination asylum status, and then we would be back at that question of is he able to readjust status. But we would say it doesn't require remand because it's unlawful. The board and the judge are required to follow the statute and the regulations, and the statute is clear. But if we were to give you relief in the sense of saying the asylum status couldn't have been terminated implicitly, then it would have to go back to the agency, right? The agency would have to terminate the asylum status. They would have to decide if they were going to have a different procedure to terminate it. Was the asylum asserted before the hearing officer? That he retained asylum status and he was eligible to adjust status. Irrespective of how the other issue came out? Yes. He asserted the right to be here. So it's been raised. Yes. There was an interim order as part of the record where the judge ruled that, no, he's not eligible to do that. And because the judge, the immigration judge, stated that once you obtained your lawful permanent residence status, you lost your asylum status. Okay. Okay. We've gone well over the time, but Judge Kelley and our judge, these are questions that I think were there. Can I just make one more point about this question about asylum status and lawful permanent residence status? Is it still just as hard after argument? I know, but in practice, the agency recognizes these statuses. I had, I mean, I realize this isn't an evidentiary. I had an interview with the agency last week. The lady was a lawful permanent resident, and we had a hearing to terminate her asylum status. Well, I know, but we can't go off that. I think we just need to consider the record. Thank you. We appreciate the strong and excellent arguments on both sides. I hope you have safe travels. Okay. Popleto, Pestero, they'll be submitted. And we'll turn to the next piece on our argument calendar. This is J.L. versus Mercer Island School.
judges: Beezer, Gould, Callahan